UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ROBIN BROPHY,

                 Plaintiff,

    -against-

COUNTY OF ULSTER and SUZANNE
HOLT, sued in her individual capacity,

                 Defendants.
--------------------------------------------------------x

Civil Action No. 1:17-cv-314 (DNH/DJS)

**COMPLAINT**

**JURY TRIAL
DEMANDED**

By and through her counsel, Sussman and Associates, plaintiff Robin Brophy, for her complaint against defendants County of Ulster and Suzanne Holt, alleges as follows:

### NATURE OF THE ACTION

1. This is an action for wrongful termination in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978 (hereinafter "Title VII"), and in violation of plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

### PARTIES

2. Plaintiff Robin Brophy is a female of legal age who resides in the County of Ulster, State of New York.

3. Defendant County of Ulster is a municipal corporation and political subdivision of the State of New York. It may sue and be sued in this court.

4. Defendant Suzanne Holt is the Director of the Ulster County Office of Economic Development and, upon information and belief, resides in the County of Ulster, State of New York. She is sued herein in her individual capacity.

## JURISDICTION AND VENUE

5. As plaintiff seeks to redress violations of her rights under Title VII and the United States Constitution, this Honorable Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 1983, 1988 and 2000e-5.

6. As a substantial part of the events giving rise to plaintiff's claims occurred in the County of Ulster, and because at least one defendant resides or does business principally in the County of Ulster, which is located in the Northern District of New York, venue is proper in this court under 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

7. Plaintiff was terminated from her employment on November 5, 2015 and timely filed a charge of discrimination with the United States Equal Opportunity Commission (hereinafter "EEOC") on or about December 3, 2015.

8. On December 22, 2016, the EEOC issued plaintiff a right to sue letter.

## FACTUAL ALLEGATIONS

**A. Background and hiring process.**

9. After an extensive interview process consisting of several interviews with defendant Holt and submission of a writing sample, Holt recommended plaintiff be hired by defendant County of Ulster as a Business Services Administrator in the Ulster County Office of Economic Development.

10. In fact, plaintiff met all necessary job qualifications and was the best and most qualified candidate for the position.

11. Plaintiff commenced employment on June 1, 2015.

12. Upon hiring plaintiff, Holt was optimistic and encouraged at plaintiff's prospects within the organization. She treated plaintiff well, trained her, took her to meetings and conveyed to plaintiff her positive sentiments.

**B. Plaintiff discloses her pregnancy and is swiftly ostracized and terminated.**

13. Within a few weeks of her hire, plaintiff disclosed to Holt that she was pregnant.

14. Immediately after this revelation, Holt's attitude toward plaintiff changed sharply.

15. For instance, after plaintiff disclosed her pregnancy to Holt, the latter became rude and demeaning, refused to train plaintiff and stopped taking her to meetings.

16. When plaintiff asked Holt for assistance with a task or to learn how to do something new, instead of helping or teaching plaintiff as she had done before plaintiff's disclosure in accordance with the standard protocol under the circumstances, Holt just curtly retorted that plaintiff should be able to just figure it out on her own and she refused to provide plaintiff any guidance or assistance.

17. This hostility went on for months despite the fact that plaintiff was performing her job well, meeting expectations and had no disciplinary issues.

18. At the same time Holt was exhibiting hostility toward plaintiff, she treated plaintiff's male counterpart, Chris Fury, who Holt hired a few weeks after plaintiff as a second Business Services Administrator (the same title as plaintiff), much differently and more favorably.

19. For instance, Holt was not rude or demeaning to Fury and continued to train him and take him to meetings.

20. In or about October 19, 2015, Holt excluded plaintiff from an Ulster County Economic Development Alliance meeting in Ellenville, New York, even though her role in the department made her responsible for items related to that organization, including attending meetings.

21. When plaintiff inquired of the office secretary why she had not been invited to the meeting, the secretary responded, in sum and substance, that Suzanne had indicated that she would be doing plaintiff a favor by not requiring her to attend the meeting because she was pregnant.

22. Plaintiff's male counterpart, Fury, was invited to the meeting and so attended.

23. In or about October 23, 2015 to October 25, 2015, Holt excluded plaintiff from the Catskill Conference in Shokan, New York, another matter related to plaintiff's job duties.

24. After the conference was deleted from her calendar, plaintiff asked Holt if it had been cancelled and Holt responded, in sum and substance, that plaintiff "would be like nine months pregnant and did not have to go."

25. In fact, by October 23, 2015, plaintiff was only about seven months pregnant and fully capable of attending, and willing to attend, the conference.

26. Holt had Fury attend the Catskill Conference in plaintiff's stead.

27. On several occasions, Holt asked plaintiff when her six-month anniversary was.

28. This was significant because, under its extant policy, after six months of employment, the County must hold an employee's position open while on maternity leave.

29. Notably, Holt had access to and knew plaintiff's hire date and, thus, knew her six-month anniversary was December 1, 2015; yet, strangely, she kept inquiring of plaintiff.

30. Plaintiff was due to deliver in December 2015 and, accordingly, in or about October 2015, she submitted her maternity paperwork to Holt.

31. But Holt refused to sign the paperwork, insisting it was the County Executive's responsibility.

32. Accordingly, Holt provided plaintiff's maternity paperwork to the County Executive's office; however, that office refused to sign the paperwork, insisting it was Holt's responsibility.

33. Plaintiff's maternity paperwork was then passed back and forth between departments for several days and was never signed.

34. Instead, on November 5, 2015, two days after the election in which County Executive Mike Hein was reelected, Holt called plaintiff into her office to meet with her and an HR representative and advised plaintiff she was being terminated effective immediately.

35. Holt provided no explanation for this action, stating only that things had just not worked out; plaintiff's termination letter provides no other explanation.

36. When plaintiff raised the fact that she had no discipline or performance issues of any sort, the HR representative at the meeting looked at Holt and questioned, in sum and substance: "Suzanne, there's no documentation?!?"

37. Holt responded that she had simply spoken to plaintiff when issues arose; however, in fact, Holt did not raise any serious performance or disciplinary issues with plaintiff verbally.

38. In fact, no performance or disciplinary issue justified plaintiff's termination and, instead, Holt caused plaintiff's termination because of plaintiff's pregnancy.

39. Though plaintiff was duly qualified and performed her job well and in a manner equal to, if not better than, Fury, her male counterpart was not terminated.

**C.  Plaintiff's political affiliation also influenced her termination.**

40. In addition to plaintiff's pregnancy, Holt also bore hostility toward plaintiff because of her political affiliation.

41. Plaintiff is a registered Republican and Holt is a Democrat, as is the County Executive in whose office the two worked.

42. On one occasion, the secretary warned plaintiff not to discuss her political affiliation in the office because she had seen other Republicans terminated after being outspoken politically.

43. As it was an election year, and though technically not required, the office staff was strongly urged to participate in campaign events.

44. Plaintiff was persuaded to make phone calls the night before the election in support of the County Executive and, on another occasion, plaintiff was advised by an office staffer that, if she "values her job," she would attend a campaign function after work, which she reluctantly did.

45. Notably, when Holt advised she was hiring plaintiff in June 2015, she told plaintiff that she looked at her voter registration information, knew she was a registered Republican and "I hired you anyway."

46. Holt's tone and demeanor in making this remark betrayed an air of sarcasm and reluctance, which plaintiff understood to mean that Holt did not like, and held against plaintiff, the fact that she was a Republican.

47. Two days after the Democratic County Executive was re-elected, Holt terminated plaintiff's employment.

48. Plaintiff did not hold a high-level or policy-making position, and political affiliation was not a *bona fide* qualification of her position.

49. Plaintiff gave birth to her son about 10 days after her termination, about one month premature and, upon information and belief, the premature birth was caused, at least in part, by the stress of plaintiff's termination and the circumstances under which such occurred.

50. Despite mitigation efforts, plaintiff has been unable to find comparable employment.

51. As a direct and proximate result of her unlawful termination, and due to the resulting stress of losing her job at the same time she was becoming a first-time mother, and due to the additional stress of the premature birth, plaintiff suffered emotional distress, including, fear, anxiety and humiliation.

52. No legitimate, non-discriminatory or non-retaliatory reason justified plaintiff's termination.

53. In terminating plaintiff's employment, Holt was acting in her capacity as Director of the Ulster County Office of Economic Development and, in that capacity, acted under color of state law.

54. At the time Holt terminated plaintiff's employment, the law prohibiting government employers from terminating employees on the basis of political affiliation was clearly established, and no reasonable person in Holt's position could have believed otherwise.

## CLAIMS FOR RELIEF

### Count I
### Unlawful Gender/Pregnancy Discrimination
### Against defendant County of Ulster
### (Title VII, 42 U.S.C. § 2000e, *et seq.*)

55. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 54 above.

56. Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act of 1978, makes it unlawful for any employer to discharge or otherwise discriminate against an employee in the terms and conditions of employment on the basis of, *inter alia*, gender, which includes pregnancy.

57. By dint of its conduct as alleged herein, and, more specifically, by ostracizing plaintiff and terminating her employment because of her pregnancy, defendant County of Ulster violated plaintiff's rights under Title VII.

58. As a direct and proximate result of defendant County of Ulster's unlawful discrimination, plaintiff has been caused to suffer loss of wages and emotional distress.

## Count II
### Unlawful Political Affiliation Retaliation
### Against defendant Suzanne Holt
### (42 U.S.C. § 1983; U.S. Const., amends. I and XIV)

59. Plaintiff hereby realleges and incorporates herein by reference each and every allegation set forth in Paragraphs 1 through 58 above.

60. The First Amendment to the United States Constitution, as made applicable to the states through the Due Process Clause of the Fourteenth Amendment, prohibits government employers from discharging or otherwise taking adverse employment actions against an employee because of that employee's political affiliation.

61. The deprivation of this right is made actionable under 42 U.S.C. § 1983.

62. By dint of her conduct as alleged in this complaint, and, more specifically, by discharging plaintiff, in part, because of her political affiliation as a registered Republican, defendant Holt violated plaintiff's First and Fourteenth Amendment rights.

63. As a direct and proximate result of defendant Holt's unlawful retaliation, plaintiff has been caused to suffer loss of wages and emotional distress.

WHEREFORE, it is respectfully requested that the court:

A. Assume jurisdiction over this matter;

B. Empanel a jury to hear and decide plaintiff's claims;

C. Award plaintiff compensatory damages, including, but not limited to, back pay and front pay, with pre- and post-judgment interest;

D. Award plaintiff the costs and disbursements of this action, including reasonable attorneys' fees; and

E. Award plaintiff such additional relief as the court deems just, proper and equitable under the circumstances.

Dated: Goshen, New York
   March 17, 2017

         SUSSMAN & ASSOCIATES
         *Attorneys for Plaintiff*

       By: _____
         Jonathan R. Goldman (520155)
         1 Railroad Avenue, Ste. 3
         P.O. Box 1005
         Goshen, NY 10924
         (845) 294-3991 [T]
         (845) 294-1623 [F]